UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - ASPEN'S MOTION FOR SUMMARY
JUDGMENT (Filed May 19, 2017, dkt. 140)

## I.    INTRODUCTION

On August 19, 2015, plaintiff Aspen Specialty Insurance Company ("Aspen") filed
the instant "Complaint for Declaratory Judgment" against defendants Riddell, Inc.; All
American Sports Corporation; Riddell Sports Group, Inc.; BRG Sports, Inc. (formerly
known as "Easton Bell Sports, Inc."); BRG Sports, LLC (formerly known as "EastonBell
Sports, LLC"); EB Sports Corp.; and BRG Sports Holdings Corp. (formerly known as
"RBG Holdings Corp.") (collectively, "defendants"). Dkt. 1. On August 31, 2016,
plaintiff filed the operative First Amended Complaint alleging two counts for declaratory
judgment. Dkt. 46 ("FAC"). Plaintiff's declaratory relief action involves an insurance
coverage dispute between Aspen, on the one hand, and defendants, on the other hand,
arising from several underlying lawsuits that defendants tendered to Aspen for defense
and indemnity roughly two years after the end of the policy period.

On September 16, 2016, defendants/counterclaimants filed counterclaims against
Aspen for (1) declaratory relief, (2) reformation, (3) breach of contract, and (4) breach of
the implied covenant of good faith and fair dealing. Dkt. 55.

On March 30, 2017, the Court modified the scheduling order to permit the fact
discovery cutoff to be continued until October 24, 2017, motions cutoff to be continued
until November 27, 2017, and expert discovery to be completed by December 14, 2017.
Dkt. 125.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

On May 19, 2017, plaintiff filed the instant motion for summary judgment on its own claims and the counterclaims. Dkt. 140 ("Motion"). On June 26, 2017, defendants filed an opposition. Dkts. 167 (redacted); 184 (under seal). On July 6, 2017, plaintiff filed a reply. Dkt. 187 ("Reply"). On July 24, 2017, the Court held oral argument on the instant motion. Thereafter the Court took the matter under submission. Dkt. 197.

## II.   BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Defendants are interrelated companies engaged in the sale of sports helmets and other sports equipment. Defendants have faced numerous lawsuits brought by users of their equipment, including suits based upon their non-helmet-products ("non-helmet claims"). See Doll v. Easton-Bell Sports, Inc., 6th Judicial Circuit, Platte County, Missouri, Case No. 13AECV02129 ("Doll"); Harman v. Target Corporation, et al., Los Angeles Superior Court Case No. BC489100 ("Harman"); Pancoast, et ux. v. Bell Sports, Inc., et al., Court of Common Pleas, Delaware County, Pennsylvania, Case No. 2014-008283 ("Pancoast"); Llanos v. Modell's Sporting Goods, Inc., et al., Supreme Court of New York, County of Bronx, Index No. 300883/14 ("Llanos"); Sigal v. Bell Sports, Inc., et al., San Diego Superior Court, Case No. 37-2013-00071359 ("Sigal"); Brian Kozicki v. Easton-Bell ("Kozicki"); Joseph Holmes v Easton-Bell ("Holmes"); and Zuccaro v. Target Corp, et al., Case No. 13-3115-MAS (D.N.J.) ("Zuccaro") (collectively "Underlying Actions"). As a result of the Underlying Actions, defendants have incurred high defense costs and paid numerous settlements.

Some Underlying Actions have settled, whereas others are ongoing, but they all arose from injuries allegedly occurring between July 31, 2011, and January 31, 2013 (the "Policy Period"). This action is about Aspen's duty, if any, to defend the Underlying Actions and/or reimburse defendants' defense costs pursuant to an insurance policy, Policy No. CRA844Wll, issued by Aspen to defendants in 2011 (the "Aspen Policy").

Aspen's motion is predicated principally upon two arguments about the Aspen Policy language. First, Aspen argues that it has no duty to defend any claims covered by the Aspen Policy because the Aspen Policy states, "[r]egardless of whether the damages . . . appear likely to exceed the 'self insured retention' amounts stated above, [Aspen] *shall*

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

*have the right, but not duty,* [sic] *to defend any claim* seeking damages for which coverage would be provided under this policy in the absence of the 'self insured retention' amount." Dkt. 140-3, Declaration of Sean McPhillips ("McPhillips Decl.") Ex. 1 (the "Policy") at 58-59, ¶ II.D.3 (emphasis added). Second, Aspen argues that it has no duty to reimburse any defense costs because the Aspen Policy contains the following language:

> [t]his insurance does not apply to, *nor are we under any obligation or duty to pay for 'defense costs', except as may apply excess of an Aggregate 'self insured retention' amount*, if applicable. If you equal that amount in your payment of 'self insured retention' amounts during the policy period, *in that event only*, we would at that time have a duty to assume all subsequent payments of 'defense costs' incurred for the remainder of the policy period.

Id. ¶ II.C.1 (emphasis added). The Underlying Actions did not erode the aggregate self insured retention amount during the Policy Period. Thus, according to Aspen, Aspen is not required to reimburse any defense costs.

For the reasons set forth below, the Court concludes that summary judgment should not be granted and that Aspen's motion should be denied.

### A.    The Aspen Policy

The Aspen Policy is 67-pages long in total, beginning with, inter alia, Commercial General Liability Declarations, "Common Policy Conditions," and an eight page "Products/Completed Operations Liability Coverage Form." See Policy. The initial pages of the Policy are followed by a series of endorsements modifying the initial forms, including, from pages 54-60, a seven-page "Self Insured Retention Endorsement" (the "SIR Endorsement"), upon which Aspen relies in its complaint seeking declaratory relief in this action. Id. A self insured retention ("SIR") is akin to a deductible, which must, in general, be spent by the insured before the insurer's obligations to provide coverage attach.

The first words at the top of the SIR Endorsement read, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**." Id. at 54 (emphasis

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

in original). Thereafter, the following sentence appears in a text box: "[t]his endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE FORM." Id. Thereafter, the SIR Endorsement lists several Self-Insured Retention Amounts, including a $500,000 per "occurrence" SIR and a $1,500,000 aggregate SIR for "all other hazards [i.e. for non-helmet claims]."[1] Id. The initial text in the body of SIR Endorsement's second page reads, "[t]he Insurance provided by this policy is subject to the following additional provisions, *which in the event of conflict with any other provisions elsewhere in the policy, shall control* the application of the Insurance to which this endorsement applies." Id. at 55 (emphasis added).

After the introductory sections, the SIR Endorsement is divided, overall, into four sections: (I) "'Self Insured Retention and 'Defense Cost'' -Your Rights and Obligations;" (II) "'Self Insured Retention and Defense Costs' - Our Rights and Obligations;" (III) "Midterm Cancellation;" and (IV) "Definitions." Id. at 55-59. The parties' dispute here derives, primarily, from language used in Sections I and II of the SIR Endorsement.

In Section I, the SIR Endorsement states:

[I.]A. The 'self insured retention' amounts stated in the Schedule of this endorsement apply as follows:

1.      Per 'occurrence'

\*\*\*

b. If a per 'occurrence' all other hazards 'self insured retention' amount is shown in the Schedule of this endorsement, it is a condition precedent to our liability that you make actual payment of all damages for each covered 'occurrence' or offense (other than a 'products-

---

[1] An "occurrence" is defined in the Aspen Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 22.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

completed operations hazard' 'occurrence'), until you have paid 'self insured retention' amounts equal to the per 'occurrence' all other hazards amount shown in the Schedule, subject to the provisions of A.3; below, if applicable. . . . The per 'occurrence' amount is the most you will pay for 'self insured retention' amounts and 'defense costs' arising out of any one 'occurrence' or offense, regardless of the number of persons or organizations making 'claims' or bringing 'suits' because of the 'occurrence' or offense.

***

3. If an aggregate 'self insured retention' amount is shown in the Schedule of this endorsement, the aggregate amount is the most you will pay for all 'self insured retention' amounts incurred under this policy due to application of the per 'occurrence' 'self insured retention' or per claim 'self insured retention' provisions of this endorsement, whichever is applicable. This amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

   If no entry appears in the schedule of this endorsement as Aggregate, then your obligation for payment of 'self insured retention' amounts applies in accordance with the per 'occurrence' or per 'claim' 'self insured retention' provisions, as applicable.

[I.]B. 'Defense Costs'

1. You are responsible for payment of all 'defense costs' within the 'self insured retention' amount(s), subject to application of an aggregate amount, if applicable.

Id. at 55-56. Section I then proceeds to set forth the insureds' duty to employ a "claim' service provider," as well as the insureds' reporting obligations. Id. 57-58.

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

Section II provides, in pertinent part:

[II]A. In no event shall this policy be obligated to satisfy your obligations for the payment of 'self insured retention' amounts or 'defense costs',

[II]B. We shall be liable only for the amount of damages in the excess of the 'self insured retention' amounts as applicable, shown in the Schedule above, up to the applicable Limits of Liability shown in the Declarations of this policy,

[II]C. 'Defense Costs'

1.      This insurance does not apply to, nor are we under any obligation or duty to pay for 'defense costs', except as may apply excess of an Aggregate 'self insured retention' amount, if applicable.  If you equal that amount in your payment of 'self insured retention' amounts during the policy period, in that event only, we would at that time have a duty to assume all subsequent payments of 'defense costs' incurred for the remainder of the policy period.

                                   ***

[II.D.]3. Regardless of whether the damages . . . appear likely to exceed the 'self insured retention' amounts stated above, we shall have the right, but not duty, [sic] to defend any claim seeking damages for which coverage would be provided under this policy in the absence of the 'self insured retention' amount.

Id. at 58-59.

Among the definitions provided by the SIR Endorsement is the following definition of "defense cost":

For purposes of this endorsement 'defense cost' means expenses directly allocable to specific 'claims' and shall include but not be limited to . . . all court costs . . . costs for all attorneys . . . and any other fees, costs or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

expenses reasonable chargeable [sic] to the investigation, negotiation, settlement or defense of a 'claim or a loss under the policy(ies).

Id. at 59.

### B.    The Negotiation of the Aspen Policy

At an unspecified time, in or around 2011, Steadfast Insurance Company ("Steadfast") informed defendants that it would not renew defendants' then-in-force policy, which was scheduled to expire on July 31, 2011 (the "Steadfast Policy"). Dkt. 184-1, Defendants' Statement of Genuine Disputes ("SGD") No. 4. Defendants, acting through their insurance brokers, AmWins Brokerage ("AmWins") and Marsh USA ("Marsh"), contacted other insurers in search of a replacement policy. One of those insurers was Aspen.

On February 3, 2011, Douglas Garfinkel, an employee of AmWins, wrote an email to Adam Schnell, a Senior Vice President at Aspen, with an initial submission regarding a prospective policy from Aspen to replace the Steadfast Policy (the "February 3rd Email"). Id. No. 6. Garfinkel's email stated, in pertinent part:

Per our correspondence, Please find the initial renewal submission for EBC. Steadfast's policy expires 7/31/11. I need to find a market willing to commit to taking this over because Steadfast has closed down. . . .

Claims are self-administered within the [Self Insured Retentions ("SIR")]. They have a strong In-House network of Attorneys as well as a National chain of Attorneys. Since the Sale Riddell to Easton, claims have drastically improved.

Steadfast has been the carrier since 1998. Since they are shutting down their operations, we need to secure a new GL home. In addition to the Steadfast Binder, I have included their current policy which is a 18 month policy. Steadfast is providing a 2/4 Limit Excess the following Per Occurrence Retentions:

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

$1,000,000 All Helmets (Ridell, Bell Helmets, etc)
$50,000 soft Goods (Gloves, Apparel, clothes, etc)
$500,000 All Other

Defense Costs erode the SIR.

McPhillips Decl. ¶ 5; Ex. 3. Garfinkel attached the expiring Steadfast Policy to the February 3rd Email. SGD No. 7. The Steadfast Policy attachment included an SIR Endorsement. SGD No. 9; McPhillips Decl. Ex. 4 (the "Steadfast SIR Endorsement") ¶ II.C.1. The Steadfast SIR Endorsement was analogous to the SIR Endorsement that ultimately appeared in the Aspen Policy insofar as it included the language of Paragraphs I.A.1.b and II.C.1. Id. The Steadfast Policy SIR Endorsement did not include the language of Paragraph I.B.1 from the Aspen Policy. Id. Instead, the Steadfast Policy SIR Endorsement provided, "You are responsible for payment of all 'defense costs', *both* within *and excess of* the 'self insured retention' amount(s) subject to application of an Aggregate amount, if applicable." Id. (emphasis added).

On March 24, 2011, Garfinkel emailed Mark Fuderanan, a Senior Casualty Underwriter at Aspen assigned to negotiating defendants' prospective policy, regarding defendants' desired insurance specifications (the "March 24th Email"). Dkt. 184-2, Declaration of Douglas Garfinkel ("Garfinkel Decl.") ¶ 6. The requested specification included requests that "Defense Expense: erodes the Retained Amounts," that "Defense Expense: is payable in excess of the Limits of Liability," and that "Products Liability/Completed Operations coverage" be "ISO or equivalent."[2] Id.

On July 13, 2011, Fuderanan emailed Garfinkel a "General Commercial Liability Indication," stating:

Aspen Specialty Insurance is pleased to offer a proposal for the coverage(s) shown above.

---

[2] ISO stands for Insurance Services Office. ISO is an organization that develops standard insurance policy forms on behalf of insurers that purchase its services. Dkt. 180-1, Aspen's Response to SGD ("SGD Response") No. 50.

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

**\*\*\***

The terms of this proposal and the policy and its endorsements supersede any specific requests that you may have provided and may also be subject to specific conditions as noted in the proposal itself.

Dkt. 169-2, Declaration of Jeffrey Kiburtz ("Kiburtz Decl.") Ex. 7 (the "Indication"). In a section entitled "Program Parameters," the Indication listed several limits of liability under the proposed policy. Id. In a section entitled "Forms and Exclusions," the Indication stated, "In addition to the policy form, the following endorsements apply . . . ." Id. The SIR Endorsement did not appear among the "Forms and Exclusions."

On the same day, Fuderanan, Garfinkel, and Scott Albert (evidently another Aspen employee), exchanged a series of emails about policy endorsements. Kiburtz Decl. Ex. 9. Fuderanan told Garfinkel that Aspen had forwarded "all the endorsements (both ISO and non-ISO)." Id. The SIR Endorsement was not attached. SGD Response No. 57.

On August 1, 2011, Fuderanan sent a Binder to Garfinkel.[3] The cover letter to the Binder stated:

This letter will confirm your instructions to bind the coverage(s) shown above.

The policy form, terms, conditions and premium for each line of business is outlined in the attached binder. The coverages will be confirmed by the policy itself.

---

[3] A Binder is "a writing (1) which includes . . . a description of the nature and amount of coverage and any special exclusions not contained in a standard policy, . . . and (2) which temporarily obligates the insurer to provide that insurance coverage pending issuance of the insurance policy." Cal. Ins. Code § 382.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

The terms of this binder and the policy and its endorsements supersede any specific requests that you may have provided and may also be subject to specific conditions as noted in the proposal itself.

Kiburtz Decl. Ex. 15. The Binder stated that the following endorsements would apply:

| ASPGL 187 | SELF INSURED RETENTION ENDORSEMENT* - $1,000,000 Helmet/ Neck Support Products; $50,000 Soft Goods; $500,000 All other Products; Per Occurrence Including ALE |
|-----------|------------------------------------------------------|

***

| Manuscript | TBD - $500,000 SIR for All Other Products Aggregated & Capped at $1,500,000 |
|------------|------------------------------------------------------|

[4] Id.

---

[4] "ASPGL 187" refers to a form endorsement developed by Aspen. The ASPGL 187 0210 form appeared in the final Aspen Policy. It provides, in pertinent part:

[2.]B.1     Once the Retained Limit is exhausted by you with respect to any occurrence, claim, 'suit', or offense, we shall thereafter have the right and duty to defend that occurrence, claim or 'suit' in accordance with the terms of this policy.

***

3.     DEFENSE EXPENSES:
You are responsible for 'defense expenses', as defined in the policy, according to your election as indicated by an 'X', below. If no election is indicated, Paragraph A, will apply.
     A.     All 'defense expenses' up to the Retained Limit. However, the most you will be responsible for with respect to damages and

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

On August 19, 2011, Aspen emailed a draft SIR Endorsement to AmWins that was identical to the Steadfast Policy SIR Endorsement. SGD No. 14. On August 21, 2011, AmWins forwarded it to Marsh for approval. Id.

On September 2, 2011, Michael Rademacher, of Marsh, emailed Garfinkel about the draft SIR Endorsement. Rademacher stated:

> this almost exactly matches the Steadfast version . . . Also I just want to confirm that this is acceptable to us: 'B. 'Defense Costs' 1. You are responsible for payment of all 'defense costs', both within and excess of the 'self insured retention' amount(s), subject to application of an aggregate amount, if applicable.' They [Aspen] would still take on defense costs if the occurrence retention is reached, correct? It addresses aggregate amount, but not occurrence.

SGD No. 17.

On September 15, 2011, Garfinkel emailed Fuderanan the following:

> Per our conversations, attached are 2 endorsements I believe you are Waiting for to issue your policy.

***

> Defense Expenses combined shall not exceed the retained Limit.

***

> Your duty to pay 'defense expenses' applies separately to each occurrence or each offense.

Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

2. SIR Endorsement - The SIR Endorsement needed some revisions. I have attached a copy of our endorsement with the corrections which are:
a. The SIR Aggregate should be $5 million (Not $3 Million)
b. We changed the contact name on the SIR Endorsement to Pete Maxwell
c. The Defense Costs (Page 4 Item B), needed correction. The same was true with Steadfast. [Insureds are] responsible for Defense Costs inside the SIR only. Hence, that sentence needed to be modified per the attached.

As mentioned, I want to deliver a complete correct policy by 10/1/11 to Marsh. Can we expedite a draft policy so I can review with Marsh and make necessary corrections prior to issuing the final approved version? Do you think this can be done by next week?

McPhillips Decl. Ex. 6. In the draft SIR Endorsement attached to Garfinkel's email, defendants proposed the following change, which resulted in the creation of Paragraph I.B.1:

You are responsible for payment of 'defense costs', ~~both~~ within ~~and excess of~~ the 'self insured retention' amount(s), subject to an aggregate amount, if applicable.

SGD No. 15.

Aspen accepted AmWins's proposed changes and issued the Aspen Policy.

## III. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

IV.    DISCUSSION

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264, 833 P.2d 545 (1992).  In California, contractual interpretation must "give effect to the mutual intention of the parties," "inferred, if possible, from the written provisions of the contract."  Cal. Civ. Code §1636; AIU Ins. Co. v. Super. Ct., 51 Cal.3d 807, 822 (1990) (citing Cal. Civ. Code §1639).  A contract's language "governs its interpretation, if the language is clear and explicit."  Cal. Civ. Code §1638.  The language must "be understood in [its] ordinary and popular sense . . . unless a special meaning is given to them by usage, in which case the latter must be followed."  Cal. Civ. Code §1644.  An insurance policy, like any contract, should be interpreted to

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

give all of its provisions meaning.  <u>AIU Ins. Co.</u>, 51 Cal. 3d at 827; <u>see also</u> Cal. Civ. Code § 1641 ("give effect to every part, if reasonably practicable").

"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." <u>MacKinnon v. Truck Ins. Exchange</u>, 31 Cal. 4th 635, 648 (2003).  However, an ambiguity should not be created where it doesn't exist. <u>Id.</u>  "The fact that a term is not defined in a policy does not make it ambiguous." <u>Foster-Gardner, Inc. v. National Union Fire Ins. Co.</u>, 18 Cal.4th 857, 868 (1998).  "Nor does '[d]isagreement concerning the meaning of a phrase'" necessarily render the phrase ambiguous. <u>Id.</u>  The policy "must be interpreted as a whole . . . in the circumstances of the case, and cannot be found to be ambiguous in the abstract." <u>Waller v. Truck Ins. Exch., Inc.</u>, 900 P.2d 619, 627 (1995), <u>as modified on denial of reh'g</u> (Oct. 26, 1995).  Where an insurance policy is ambiguous, it should be interpreted to be consistent with the "objectively reasonable expectations of the insured," <u>Bank of West</u>, 2 Cal. 4th at 1265, regardless of the insureds' sophistication. <u>AIU Ins. Co.</u>, 799 P.2d at 1265.  Where a contract's language alone is ambiguous, the mutual intent of the parties may also be inferred from the parties' conduct before a controversy arose. <u>Employers Reinsurance Co. v. Superior Court</u>, 74 Cal. Rptr. 3d 733, 745 (2008), <u>as modified</u> (Apr. 22, 2008).  "It is to be assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention." <u>Universal Sales Corp. v. California Press Mfg. Co.</u>, 128 P.2d 665, 672 (1942).

With the foregoing principles in mind, the Court proceeds to evaluate Aspen's claims and defendants' counterclaims.

### A.    **Aspen's Duty to Defend**

Aspen seeks summary judgment regarding its claim that it has "no duty to defend Defendants in any of the Underlying Actions."  FAC ¶ 23.  In support of its contention, Aspen relies upon the fact that the Aspen Policy is an excess policy and the language of SIR Endorsement Paragraph II.D.3.  Paragraph II.D.3 provides:

> [Aspen] shall have the right, but not duty, to defend any claim seeking damages for which coverage would be provided under this policy in the absence of the "self insured retention" amount.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

McPhillips Decl. Ex. 1 at 59.  As the Court has previously ruled, the SIR Endorsement "make[s] clear that Aspen was not a primary insurer with a 'first dollar' duty to defend." Dkt. 28.  However, that does not foreclose a duty to defend once the SIR amounts have been exhausted.  Aspen contends that Paragraph II.D.3 is unambiguous and forecloses *any* duty to defend the Underlying Actions.  In opposition, defendants contend that Paragraph II.D.3 is more reasonably interpreted to apply only to claims falling within the SIR.  If defendants are correct then Paragraph II.D.3 is silent regarding Aspen's potential duty to defend claims where, for example, the per occurrence SIR has been exhausted. Because the Court finds Paragraph II.D.3 reasonably susceptible to defendants' interpretation, the Court declines to grant summary judgment in Aspen's favor.

The Court must endeavor to give meaning to all of the language in the Aspen Policy rather than consider words in isolation.  If the intent of Paragraph II.D.3 was to eliminate any duty to defend all claims regardless of their timing or size, there would have been no reason to state that Aspen has no duty to defend claims "seeking damages for which coverage would be provided under this policy in the absence of the [SIR] amount."  It would have been enough simply to state that Aspen has no duty to defend any claims, but retains the right to do so.  Instead, Paragraph II.D.3 discusses Aspen's rights and obligations in relation to claims seeking damages within the insureds' SIR.  In light of the language at the end of Paragraph II.D.3, the clause can be reasonably interpreted as ensuring Aspen's right, but not duty, to defend claims falling within the applicable SIR.  Read in that way, Paragraph II.D.3 is silent as to Aspen's duty to defend claims seeking damages in excess of the SIR.

Paragraph II.D.3 appears in a sub-section entitled "D. Settlement of 'Claims'." Policy at 59.  Sub-section D consists of three paragraphs, the third of which is Paragraph II.D.3.  Paragraph II.D.1 explains Aspen's right to negotiate settlement of any claim "within and in excess of the applicable [SIR]."  Paragraph II.D.2 provides that Aspen may pay SIR amounts on the insureds' behalf to defend or settle claims and then seek reimbursement up to the SIR.  In light of these preceding paragraphs, the thrust of sub-section D appears to be that Aspen retains the right to intervene in claims regardless of whether the insureds have yet paid the full SIR.  In the context of these provisions, it would be reasonable to infer that Paragraph II.D.3 is similarly directed at Aspen's right to intervene and take on the defense (or settlement) of claims within the SIR.  None of the

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

paragraphs of sub-section D expressly discuss Aspen's obligations once an occurrence exceeds the SIR. Thus, the preceding language of sub-section D lends further support to defendants' interpretation.

Viewed as a whole, the SIR Endorsement explains how the parties will allocate and resolve expenditures towards the SIR amounts and defense costs as well as how those amounts affect the parties' obligations and rights. Consistent with that general purpose, the two principal sections of the SIR Endorsement are entitled "'I. Self Insured Retention' and 'Defense Costs' – Your Rights and Obligations" and "'II. Self Insured Retention' and 'Defense Costs' – Our Rights and Obligations." Thus the structure of the SIR Endorsement and its overarching purpose lend further support to defendants' interpretation of Paragraph II.D.3 insofar as defendants' interpretation would more closely relate the duty to defend to the SIRs. If Paragraph II.D.3 were intended to mean that Aspen has no duty to defend any claims regardless of the SIR, then it is unclear why such a statement would appear in the SIR Endorsement at all, let alone in a section about "Self Insured Retention" and "Defense Costs," and a sub-section about "Settlement of 'Claims'."

In light of the foregoing, the Court concludes that Paragraph II.D.3 is, at least, ambiguous regarding Aspen's duty to defend certain claims depending upon the costs and damages sought in any particular claim. One reasonable interpretation of Paragraph II.D.3 is that it has no effect upon Aspen's duty to defend claims once the SIR has been satisfied.[5] If Paragraph II.D.3 does not eliminate Aspen's duty to defend, then other

---

[5] Aspen's argument regarding the proper interpretation of Paragraph II.D.3 relies principally upon General Star Indem. Co. v. Superior Court, 47 Cal. App. 4th 1586, 55 Cal. Rptr. 2d 322 (1996). There, the court examined a policy with a per occurrence SIR and no aggregate SIR. The policy provision at issue stated that the insurer "shall have the right *but not the duty* to assume charge of the defense and/or settlement of any claim or 'suit' brought against [insured].'" Id. at 1590. The policy further provided that the duty to defend would be "'reinstated' only in the event that the 'aggregate Retained Limit' is exhausted," but, because there was no aggregate SIR, the Court held that there was "no possibility of 'reinstatement' of a duty to defend." Id. Therefore, the General Star court concluded that the issue was "controlled by the rather clear language of the policy," and the insurer had no duty to defend *any* claim. Id. at 1589, 1591.

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|---|---|---|---|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

provisions of the Aspen Policy impose such a duty depending upon whether defendants have exhausted the applicable, per occurrence SIR.[6]

---

The policy language at issue in <u>General Star</u> was clearer and more concise than the language of Paragraph II.D.3. Here, rather than simply state that Aspen has no duty to defend any claim, Paragraph II.D.3 proceeds to say that it applies to claims "seeking damages for which coverage would be provided under this policy in the absence of the 'self insured retention' amount." In other words, in contrast to the policy at issue in <u>General Star</u>, the SIR Endorsement includes language suggesting Aspen has no duty to defend claims *seeking damages within the SIR amount*. If that is correct, the SIR Endorsement is silent as to Aspen's potential duty to defend claims seeking damages in excess of the SIR. In contrast to the endorsement in <u>General Star</u>, where the only other language at issue lent nothing to the analysis (there was no aggregate SIR, so those provisions had no meaning), the provisions of the SIR Endorsement support defendants' interpretation of Paragraph II.D.3 because those surrounding provisions suggest Paragraph II.D.3 is limited to claims *within the SIR*.

Paragraph II.D.3 should be interpreted in a way that does not render any language superfluous. <u>See</u> Cal. Civ. Code § 1641. Accordingly, the additional language of Paragraph II.D.3, "seeking damages for which coverage would be provided under this policy in the absence of the 'self insured retention' amount," should, if reasonably practicable, be given effect. In advance of oral argument on this motion, the Court distributed a tentative order consistent with its ruling here. Plaintiff's counsel renewed its arguments regarding <u>General Star</u> during oral argument, but plaintiff has not offered an interpretation of the additional language of Paragraph II.D.3. Because the policy language at issue in <u>General Star</u> differs from the SIR Endorsement here and because the distinguishing language here suggests a different result, <u>General Star</u> is not controlling.

[6] The ASPGL 187 0210 form, which also appears in the Aspen Policy, provides that, once a claim exhausts the per occurrence SIR, Aspen shall have the right *and duty* to defend said claim. Similarly, the "Products/Completed Operations Liability Coverage Form" imposes a duty to defend claims (although the SIR Endorsement and ASPGL 187 0210 both limit that duty). Absent any conflicting language in the SIR Endorsement, this antecedent language would impose a duty upon Aspen to defend at least some claims.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

Plaintiff has not submitted undisputed evidence about the damages and costs associated with each Underlying Action. Instead, plaintiff's motion rests solely upon its flawed contention that Paragraph II.D.3 is unambiguous.[7] Accordingly, the Court **DENIES** Aspen's motion for summary judgment that it has no duty to defend the Underlying Actions.[8]

### B.     Aspen's Duty to Reimburse Defense Costs

Aspen further seeks a determination that it "has no duty to reimburse and/or pay the defense costs actually incurred or being incurred in the Underlying Actions." FAC ¶ 27. The parties base their arguments, primarily, upon two passages of the SIR Endorsement: Paragraph I.A.1.b and Paragraph II.C.1. Paragraph I.A.1.b states:

> The per "occurrence" amount is the most you will pay for "self insured retention" amount *and* "*defense costs*" arising out of any one "occurrence"

---

[7] Aspen appears to contend that an excess insurance policy like the Aspen Policy relieves the insurer of *any* duty to defend claims. However, Aspen is incorrect. Aspen may have different obligations depending upon whether the SIR has been exhausted. As numerous courts have observed, the insurer may still have a duty to defend claims pursuant to an excess insurance policy once the applicable SIR has been exhausted. <u>See</u> <u>City of Oxnard v. Twin City Fire Ins. Co.</u>, 37 Cal. App. 4th 1072, 1077, 44 Cal. Rptr. 2d 177 (1995) (excess insurer's duties to defend arise when primary coverage has been exhausted); <u>Nabisco, Inc. v. Transp. Indem. Co.</u>, 143 Cal. App. 3d 831, 836 (Ct. App. 1983) (excess insurer would have duty to defend once it "appears damages will exceed [the SIR]."). The language of the policy governs. The Aspen Policy, for example, included a form, the ASPGL 187 0210 form, which imposes a duty to defend claims once the insureds exhaust their per occurrence SIR.

[8] Aspen contends that it is entitled to summary judgment regarding all of defendants' counterclaims. One such counterclaim is defendants' claim for declaratory relief that Aspen has a duty to defend the Underlying Actions. Accordingly, the first counterclaim appears to be analogous to Aspen's first claim. The motion is also **DENIED** as to the counterclaim for declaratory relief.

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

or offenses regardless of the number of persons or organizations making "claims" or bringing "suits".

Policy at 55 (emphasis added). Paragraph II.C.1 states:

> This insurance does not apply to, nor are we under any obligation or duty to pay for "defense costs", except as may apply excess of an Aggregate "self insured retention amount," if applicable. If you equal that amount in your payment of "self insured retention" amounts during the policy period, in that event only, we would at that time have a duty to assume all subsequent payments of "defense costs" incurred for the remainder of the policy period.

Id. at 58. Based upon Paragraph II.C.1, Aspen argues that its duty to reimburse defense costs *only* attaches if a specific condition is met, namely, insureds must exhaust the Aggregate SIR during the Policy Period. Only then, according to Aspen, does Aspen have any duty to reimburse defense costs and only until the end of the Policy Period. Aspen argues that its duty to reimburse defense costs is unrelated to the per occurrence SIR and depends solely upon the insureds' satisfaction of the aggregate SIR within the Policy Period.

Defendants contend that Aspen's interpretation is at odds with Paragraph I.A.1.b. The Court agrees. If Paragraph II.C.1 means Aspen has no duty to reimburse defense costs when the per occurrence SIR has eroded, then, contrary to the unambiguous language of Paragraph I.A.1.b, the per occurrence SIR is *not* the most the insured will pay for self insured retention amounts and defense costs on a per occurrence basis. "[W]here two clauses of a contract are apparently in direct conflict, it is the duty of the court to reconcile the conflicting clauses so as to give effect to the whole of the instrument, if that is possible within the framework of the general intent or predominant purpose of the instrument." In re Marriage of Williams, 105 Cal. Rptr. 406, 412 (Ct. App. 1972); see also Estate of Petersen, 1753, 34 Cal. Rptr. 2d 449, 458 (1994) ("Contradictory or inconsistent provisions of a contract are to be reconciled by interpreting the language in such a manner that will give effect to the entire contract."). Here, the SIR Endorsement's provisions only conflict if Aspen's interpretation of Paragraph II.C.1 is accepted. However, the provisions do not necessarily conflict.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

As noted in the Court's order on defendants' motion to dismiss, dkt. 28, Paragraph I.A.1.b and Paragraph II.C.1 address different subjects. Paragraph I.A.1.b addresses the maximum amount in self insurance and defense costs (combined) that defendants will be obligated to pay on a *per occurrence* basis. Paragraph I.A.1.b has no temporal restriction and appears to apply indefinitely. Thus, implicit in the plain language of Paragraph I.A.1.b is that someone other than the insured, i.e. the insurer, will pay defense costs once the per occurrence SIR has eroded. Paragraph II.C.1 addresses Aspen's duty to reimburse defense costs resulting from the erosion of the *aggregate* SIR. How the Aggregate SIR is calculated and applied is governed by different provisions than the per occurrence SIR. For example, whereas defense costs erode the per occurrence SIR, they do not erode the aggregate SIR. Compare ¶ I.A.3 (aggregate is the "most [insured] will be for all 'self insured retention' amounts," without reference to defense costs) with ¶ I.A.1.b (per occurrence SIR is "the most you will pay for 'self insured retention' amounts and 'defense costs' arising out of any one 'occurrence'"). Paragraph II.C.1 describes when Aspen will be obligated to reimburse "*all* subsequent payments of 'defense costs'." ¶ II.C.1 (emphasis added). In other words, Paragraph II.C.1 describes the conditions under which Aspen will reimburse defense costs arising from any and all claims after the erosion of the Aggregate SIR. Whereas that duty, the duty to reimburse *all* subsequent defense costs, is temporally limited and attaches only if the Aggregate SIR is eroded during the Policy Period – Paragraph II.C.1 is silent as to Aspen's defense cost obligations once the *per occurrence* SIR has eroded for a claim or claims. Where defense costs and SIR expenses exceed the per occurrence SIR amount, Paragraphs I.A.1.b and I.B.1 (Insureds are "responsible for payment of all 'defense costs' *within* the 'self insured retention' amount(s)" (emphasis added)) govern Aspen's duty to reimburse defense costs arising out of that occurrence.

At bottom, because Aspen's proposed interpretation would lead to a conflict among the SIR Endorsement provisions, the Aspen Policy is not reasonably susceptible to Aspen's proposed interpretation. The Aspen Policy unambiguously imposes a duty to reimburse defense costs arising out of any occurrence if the per occurrence SIR has been eroded. Aspen has not offered undisputed evidence regarding whether any of the Underlying Actions eroded the per occurrence SIR. Instead, Aspen's motion relies exclusively upon its interpretation of the Aspen Policy, which would not require payment of defense costs regardless of whether the per occurrence SIR were exhausted.

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

Accordingly, the Court **DENIES** Aspen's motion for summary judgment regarding its second declaratory relief count.[9]

### C.    Insureds' Counterclaims

Aspen also seeks summary adjudication of the counterclaims. The sole remaining counterclaim that has not been addressed is the counterclaim for reformation. Aspen also seeks summary judgment regarding counterclaimants' entitlement to punitive damages. The Court addresses each in turn.

#### 1.    Reformation

Defendants'/counterclaimants' remaining counterclaim is for reformation. California Civil Code section 3399 provides:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Counterclaimants' reformation claim is predicated upon their allegation that:

---

[9] Aspen's motion for summary judgment on the counterclaim for breach of contract is predicated upon Aspen's interpretation of Paragraph II.C.1 and its contention that it had no duty to pay any defense costs. Similarly, Aspen contends that it could not have breached the implied duty of good faith and fair dealing because it had no duty to reimburse defense costs. As discussed herein, the Aspen Policy does impose a duty to reimburse certain defense costs when the per occurrence SIR has been exhausted. Thus Aspen's failure to present undisputed evidence relating the Underlying Actions to the per occurrence SIR precludes a ruling in its favor on these two counterclaims. Aspen's motion is **DENIED** with respect to the counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

> If Aspen's construction of the language in the version of the Aspen Policy attached to its Complaint is found to be the only reasonable interpretation, and therefore given effect by this Court, then that policy language does not reflect the true intention of the parties. This mistake was either mutual, in that both parties intended the Aspen Policy to provide coverage for defense costs exceeding the applicable retention, or unilateral, in that Aspen knew or should have known of or suspected the Insureds' mistaken belief that such coverage would be available but failed to disclose its true intentions.

Dkt. 55 ¶ 76.

Although the Court generally rejects Aspen's contentions about the interpretation of the Aspen Policy, the Court agrees with Aspen that Paragraph II.C.1 unambiguously imposes a temporal limitation on its duty to reimburse defense costs in excess of the Aggregate SIR. Counterclaimants appear to contend that Paragraph II.C.1 is entirely inconsistent with the parties' intentions, requiring reformation. In that regard, the Court finds that material issues of disputed fact exist.

Having reviewed the parties' submissions, it appears that there are at least disputed issues of material fact regarding counterclaimants' reformation claim. Plaintiff does not present any evidence that the parties discussed Paragraph II.C.1 or the temporal limitations it imposes prior to the issuance of the Aspen Policy or at any time prior to Aspen's denial of coverage. Although the language of Paragraph II.C.1 was part of the Steadfast Policy attached to some initial emails between the parties, no one appears to have ever said that counterclaimants desired an identical SIR Endorsement or discussed Aspen's defense cost obligations after the Policy Period ended. Neither the email negotiations, nor defendants' requested specifications, nor the Binder discussed the temporal limitation contained in the Steadfast SIR Endorsement or the Aspen Policy SIR Endorsement. The parties' mutual silence about such an important term of the SIR Endorsement suggests they may have been mutually mistaken about its meaning or failed to read it. Once the draft SIR Endorsement was finally discussed, Garfinkel's September 15, 2011 email to Fuderanan suggests, at least, a unilateral mistake about counterclaimants' defense cost obligations in relation to the aggregate SIR. Garfinkel stated, "[Insureds are] responsible for Defense Costs *inside the SIR only*." Kiburtz Decl. Ex. 17. Based upon Garfinkel's email a reasonable trier of fact could conclude that

defendants' labored under the mistaken belief that Aspen would be obligated under the SIR Endorsement to pay all defense costs in excess of the aggregate SIR without any temporal limitation.  Since the email was sent to Aspen, it also supports an inference that Aspen may have known of or suspected defendants' mistake.[10]

---

[10] Aspen argues that there was no prior meeting of the minds to which the Aspen Policy could be reformed and that counterclaimants' reformation claim is time-barred because it was not brought within three years of the issuance of the Aspen Policy.  Both arguments are mistaken.  As an initial matter, the Binder appears to have set forth the essential terms of the Aspen Policy and it makes no mention of a temporal limitation on defense cost coverage in excess of the aggregate SIR.  See Kiburtz Decl. Ex. 15.  To the extent that the Binder represented a meeting of the parties' minds and did not impose a temporal limitation upon Aspen's duty to reimburse defense costs, the Binder may conflict with the Aspen Policy and provide a basis for reformation.

As for the statute of limitations, the parties agree that a reformation claim must be brought within three years of accrual.  A claim for reformation accrues when the contracting parties' mistake is discovered or should have been discovered in the exercise of reasonable diligence.  Laing v. Occidental Life Ins. Co. of Cal., 244 Cal. App. 2d 811, 820, 53 Cal. Rptr. 681 (Ct. App. 1966).  "An insured has the right to rely on the presumption that the policy he receives is in accordance with his application; and his failure to read it will not relieve the insurer or its agent from the duty of so writing it."  Id. at 819.  Whether a party has exercised reasonable diligence is ordinarily a question of fact.  Broberg v. Guardian Life Ins. Co. of Am., 90 Cal. Rptr. 3d 225, 232 (2009).  Here, Aspen did not deny coverage for defense costs until May 27, 2015.  This action was filed in August 2015.  The SIR Endorsement was added to the Aspen Policy after the Binder was sent and the parties' negotiations to that point had never discussed any temporal limit on Aspen's duty to reimburse defense costs.  In light of the foregoing, the date by which defendants should have discovered the temporal limitations contained in Paragraph II.C.1 is a question of fact about which the current record supports competing inferences.  The Court declines to render summary judgment based upon the statute of limitations.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

In light of the foregoing, there appear to be material issues of disputed fact regarding counterclaimants' reformation claim. The Court **DENIES** the motion for summary judgment regarding this counterclaim.[11]

### 2.  Punitive Damages

"[W]ithout the possibility of tort damages hanging over its head when it makes a claims decision, an insurance company may choose not to deal in good faith when a policyholder makes a claim." <u>Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.</u>, 97 Cal. Rptr. 3d 568, 585 (2009), <u>as supplemented on denial of reh'g</u>, 2009 WL 2659463 (Cal. Ct. App. Aug. 28, 2009). However,

> breach of an insurance contract does not automatically subject an insurer to tort damages for bad faith breach. Bad faith cases are analyzed in a three-step process: First, was there a breach at all so as to warrant contract damages? Second, was the breach unreasonable so as to warrant tort damages? Third, was the breach so egregious that there is evidence of "oppression, fraud or malice" under Civil Code section 3294, subdivision (a) so as to warrant punitive damages?

<u>Id.</u> At the summary judgment stage, the Court must evaluate whether the evidence viewed in the light most favorable to the non-moving party would support a finding of

---

[11] Insofar as the Court finds material issues of disputed fact regarding the counterclaim for reformation, these issues of disputed fact provide an alternative basis for denying Aspen's motion for summary judgment regarding its second declaratory relief claim. Pursuant to California Civil Code section 1640, "[w]hen, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Even where there is no "reasonable alternative construction of the contractual language," one party to a contract may avoid enforcement of unambiguous provisions if those provisions were erroneously included. <u>Hess v. Ford Motor Co.</u>, 41 P.3d 46, 52 (2002). Thus, even if the Aspen Policy language were unambiguous, which it is not, defendants' evidence of a mistake would preclude summary adjudication of Aspen's declaratory relief claim.

---

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

"oppression, fraud, or malice," by "clear and convincing" evidence. <u>Basich v. Allstate Ins. Co.</u>, 87 Cal. App. 4th 1112, 1119, 105 Cal. Rptr. 2d 153 (2001). Aspen contends that counterclaimants should not be permitted to pursue punitive damages because Aspen did not breach any express provisions of the Aspen Policy, Aspen's coverage position was reasonable, and defendants cannot prove oppression, fraud or malice.

The Court has already concluded that there are material issues of disputed fact regarding whether Aspen breached its duties under the Aspen Policy. Additionally, the Court has rejected Aspen's interpretation of Paragraph II.C.1 as unreasonable because it is at odds with other language of the SIR Endorsement. In light of that ruling, the Court declines to find that Aspen's coverage position is so reasonable as to preclude punitive damages. <u>See</u> <u>Delgado v. Heritage Life Ins. Co.</u>, 203 Cal. Rptr. 672, 681 (Ct. App. 1984) (even where the insurer's coverage position is reasonable, that does not foreclose punitive damages). There is a material issue of disputed fact as to whether Aspen was aware of a mistake in the Aspen Policy drafting. Should counterclaimants ultimately prove their reformation claim that Aspen knew of a mistake in the policy language and subsequently denied coverage on the basis of that language – a trier of fact might reasonably conclude that the denial was in bad faith.

Determinations related to the assessment of punitive damages are traditionally left to the discretion of the jury, <u>Amadeo v. Principal Mut. Life Ins. Co.</u>, 290 F.3d 1152, 1165 (9th Cir. 2002), and made in light of the "totality of the evidence," <u>Gelfand v. N. Am. Capacity Ins. Co.</u>, Case No. 12-cv-4819-EMC, 2013 WL 6662501, at *6 (N.D. Cal. Dec. 17, 2013). Here, fact discovery is still ongoing. Counterclaimants aver that they continue to uncover additional evidence. At the time counterclaimants' opposition was filed, only one deposition had been taken. Kiburtz Decl. ¶ 97. Not only does the present record support a plausible inference of bad faith by Aspen, counterclaimants request an opportunity to complete fact discovery regarding whether Aspen acted with oppression, fraud, or malice. In response Aspen argues that the issue presented by its motion is "one of contract interpretation where the admissibility of evidence extrinsic to the contract is limited." Reply at 24. However, the Court has rejected Aspen's interpretive contentions and the foregoing is no answer as far as Aspen's intent and punitive damages are concerned.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-06324-CAS (FFMx) | Date | August 2, 2017 |
|----------|--------------------------|------|----------------|
| Title | ASPEN SPECIALTY INSURANCE COMPANY V. RIDDELL, INC. ET AL. | | |

In light of the foregoing, Aspen's motion for summary judgment regarding counterclaimants' request for punitive damages is **DENIED**.

## V.    CONCLUSION

Aspen's motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

|                     |      |    |
|---------------------|------|----|
|                     | 00   | 00 |
| Initials of Preparer | CMJ  |    |